OPINION
{¶ 1} Defendant-appellant, Lee D. Williams, appeals from a judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On March 13, 2001, in case No. 01CR-03-1465, a grand jury indicted defendant on three counts of kidnapping and five counts of rape. The charges were based on the allegations of defendant's former girlfriend, Kimberly Folk. The action was consolidated with case No. 01CR-01-391, wherein defendant had been indicted on two counts of rape and two counts of burglary based upon allegations of another former girlfriend, Amanda Saunders.
 {¶ 3} In October 2001, defendant was tried by a jury as to the crimes alleged in the two indictments. On October 19, 2001, the jury found defendant guilty of raping and kidnapping Ms. Folk in January 2000. The jury also found defendant guilty of committing one count of kidnapping and two counts of rape on September 20, 2000. The jury found defendant not guilty of the remaining counts, including all counts relating to Ms. Saunders. The court held a sentencing and sexual predator hearing and sentenced defendant to eight years in prison for each of the two kidnapping counts and eight years in prison for each of the three rape counts. The court found that defendant's two kidnapping convictions should be served concurrent to each other and concurrent to his rape convictions. The court held that defendant's three rape convictions should be served consecutively for a total of 24 years in prison. The court found defendant to be a sexual predator pursuant to R.C. 2950.09.
 {¶ 4} Defendant appealed his convictions, his sentences, and the trial court's sexual predator determination to this court. InState v. Williams, Franklin App. No. 02AP3-5, 2002-Ohio-4503, which was issued on September 3, 2002, this court affirmed defendant's three rape convictions, the trial court's imposition of an eight-year sentence for each of defendant's three rape convictions, the trial court's determination that defendant is a sexual predator, and the trial court's imposition of a fine and financial sanction of $385. However, this court reversed the trial court's imposition of consecutive sentences and remanded the matter to the trial court for a determination, consistent with this court's opinion, of whether consecutive sentences should be imposed. Furthermore, this court remanded the case to the trial court with instructions to merge defendant's two kidnapping convictions with his three rape convictions pursuant to R.C. 2941.25. Defendant pursued an appeal with the Supreme Court of Ohio. However, review was denied on January 15, 2003. On October 20, 2003, the trial court resentenced defendant in accordance with Williams. Defendant did not appeal from the judgment entry on resentencing.
 {¶ 5} On August 12, 2002, before this court issuedWilliams, defendant filed a petition for postconviction relief alleging ineffective assistance of counsel. Defendant argued that his trial counsel did not adequately investigate possible witnesses regarding the credibility of Ms. Folk. In support of that contention, defendant submitted affidavits from three different individuals. On September 9, 2002, defendant filed a motion requesting that the trial court issue an order permitting him to conduct limited discovery relating to his claim for postconviction relief. On August 30, 2004, defendant moved to amend his petition for postconviction relief to include an allegation that the trial court imposed non-minimum, consecutive sentences in violation of Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531. On October 22, 2004, defendant filed another motion for leave to conduct discovery, requesting a court order permitting him to subpoena particular mental health records maintained by Fairfield Memorial Medical Center.
 {¶ 6} In a decision entered March 10, 2005, the trial court dismissed defendant's petition and amended petition for postconviction relief. The trial court determined that (1) defendant failed to set forth sufficient operative facts that would require a hearing; (2) the claims based on alleged ineffective assistance of counsel are precluded by res judicata; and (3) the Blakely claim fails as a matter of law in view ofState v. Abdul-Mumin, Franklin App. No. 04AP-485,2005-Ohio-522.
 {¶ 7} Defendant appeals and has set forth the following three assignments of error:
I. THE TRIAL COURT ERRED IN FAILING TO HOLD A HEARING OR ALTERNATIVELY GRANTING RELIEF ON PETITIONER'S FIRST CLAIM FOR RELIEF ALLEGING HIS TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.
II. THE TRIAL COURT ERRED IN FAILING TO HOLD A HEARING OR ALTERNATIVELY GRANTING RELIEF ON PETITIONER'S SECOND CLAIM FOR RELIEF ALLEGING THAT IMPERMISSIBLE JUDICIAL FACT-FINDING USED TO IMPOSE NON-MINIMUM, CONSECUTIVE SENTENCES AND THE FAILURE TO USE THE BEYOND A REASONABLE DOUBT STANDARD TO FIND OPERATIVE SENTENCING FACTS VIOLATED HIS RIGHTS AS GUARANTEED BY THE FIFTH,SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES, AND ARTICLE I, SECTIONS 1, 2, 5, 9, 16 AND 20 OF THE OHIO CONSTITUTION.
III. THE TRIAL COURT ERRED IN FAILING TO PERMIT LIMITED DISCOVERY TO OBTAIN EVIDENCE TO SUPPORT PETITIONER'S CLAIMS WHICH PRESENTED SUBSTANTIVE GROUNDS FOR RELIEF.
 {¶ 8} Defendant's first assignment of error alleges that the trial court erred in not holding a hearing on his postconviction petition and erred in denying said petition. A petition for postconviction relief is a statutory vehicle designed to correct the violation of a defendant's constitutional rights. State v.Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321, ¶ 28. More specifically, R.C. 2953.21, which governs petitions for postconviction relief, provides a procedure for a person convicted of a criminal offense to claim that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio or United States Constitutions.
 {¶ 9} A petition for postconviction relief is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction.State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. Although designed to address claimed constitutional violations, the postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v.Calhoun (1999), 86 Ohio St.3d 279, 281; State v. Steffen
(1994), 70 Ohio St.3d 399, 410. A petition for postconviction relief thus does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition.State v. Jackson (1980), 64 Ohio St.2d 107, 110.
 {¶ 10} Pursuant to R.C. 2953.21(C), before granting an evidentiary hearing on the petition, "the trial court shall determine whether there are substantive grounds for relief."Calhoun, at 282-283 (emphasis sic.). In order to be entitled to a hearing on a petition for postconviction relief, which alleges ineffective assistance of counsel, "the petitioner bears the initial burden * * * to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." Jackson, at 111.
 {¶ 11} In Calhoun, at 284, the Supreme Court held that, "in reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact." The Calhoun court added, "[t]o hold otherwise would require a hearing for every postconviction relief petition." Id. at 284. Factors that a trial court should consider in this determination include, but are not limited to:
* * * (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. * * *
Id. at 285.
 {¶ 12} Additionally, "where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." Id. at 284.
 {¶ 13} Here, defendant's original petition alleged ineffective assistance of counsel. More specifically, defendant alleged that his trial counsel was not prepared for trial and that he failed to adequately investigate the credibility of Ms. Folk. Defendant argues that had his counsel conducted an investigation regarding the credibility of Ms. Folk, then it would have been revealed that she had previously made false allegations and had a severe mental disorder.
 {¶ 14} In defendant's direct appeal from his conviction, his first assignment of error alleged that the trial court erred in not conducting a more detailed inquiry into defendant's claim that his counsel was not prepared for trial. This court overruled that assignment of error after finding that the trial court "adequately inquired into whether appellant's trial counsel was sufficiently prepared to represent appellant during his trial."Williams, at ¶ 32. This court further noted that defendant's "claim that his counsel was not prepared appears to be related to [his] attempt to gain another continuance and/or another appointed attorney. Therefore, we find the record supports the trial court's conclusion that appellant's trial counsel was prepared to represent him." Id.
 {¶ 15} In ruling upon defendant's petition for postconviction relief, the trial court resolved that defendant's ineffective assistance claim was barred by res judicata. In this appeal, defendant argues that res judicata did not bar his claim because there was evidence de hors the record that was relevant to his claim.
 {¶ 16} "Res judicata is applicable in all postconviction relief proceedings." State v. Szefcyk (1996), 77 Ohio St.3d 93,95. In State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus, the Supreme Court of Ohio stated:
Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by thedefendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
(Emphasis sic.)
 {¶ 17} Even assuming defendant's ineffective assistance claim was not barred by res judicata, the trial court did not err in dismissing defendant's petition for postconviction relief. In order to establish ineffective assistance of counsel, defendant must meet the two-part test outlined in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, defendant must demonstrate that his trial counsel's performance was deficient. Namely, defendant must show "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. A court reviewing an ineffective assistance of counsel claim must determine whether, under the circumstances, the acts or omissions were "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 18} Second, in order for defendant to establish ineffective assistance of trial counsel, he must demonstrate that the deficient performance prejudiced him. This requires defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 19} Defendant presented affidavits of Mary Ann Torian, Alexander Williams, and Monica L. Turner in support of his claim of ineffective assistance of trial counsel. Mr. Williams, an uncle of defendant, averred that defendant's trial counsel told him after defendant's sentencing that he had not prepared for defendant's trial. In its decision, the trial court assessed the credibility of Mr. Williams's testimony. In this regard, the trial court noted that the trial judge and the reviewing judge were the same, the affiant is the uncle of defendant, and the affidavit contains hearsay. Additionally, the trial court found it most significant that the statement in the affidavit that trial counsel said he was not prepared for trial directly contradicted trial counsel's statement to the court that he was "ready, willing and able to proceed" at trial. (Tr. 22.)
 {¶ 20} In her affidavit, Ms. Torian averred that charges filed against defendant in Perry County were dropped by the prosecuting attorney "because there were credibility problems with Kim Folk[.]" She further stated that Ms. Folk "had been involuntarily committed to the psychiatric ward of the Fairfield Memorial Medical Center" in November 1995, and that the basis of the commitment was "that Kim Folk suffers from some sort of bi-polar/schizophrenic disorder that causes her to be delusional when she is no[t] on her medication." (Aug. 12, 2002 Affidavit of Mary Ann Torian.) The trial court observed that it was questionable whether Ms. Torian's testimony concerning the reason the charges filed against defendant in Perry County were dismissed and her understanding of the mental condition of Ms. Folk would have been admissible.
 {¶ 21} Ms. Turner, a sister of defendant, averred that she would have testified that Ms. Folk has a reputation in her family for not telling the truth, that Ms. Folk had previously made false accusations against defendant, and that Ms. Folk told her that police detectives "threatened and harassed" her into accusing defendant of raping her. (Aug. 12, 2002 Affidavit of Monica L. Turner.) She further stated that she had suggested to trial counsel that he contact Ms. Torian so he could ascertain further information regarding Ms. Folk. The trial court determined that the record demonstrates trial counsel's awareness of defendant and his sister's desire that he call witnesses to testify concerning the character of Ms. Folk, and that he declined to so act as a matter of trial strategy. In this regard, defendant argues that the trial court confused the concept of whether to call character witnesses regarding the accused versus attacking the credibility of the victim. He asserts that trial counsel's statements at trial regarding character evidence were in reference to defendant's character, not the character of Ms. Folk. In support, defendant cites to his trial counsel's statement that the "only defense in this case * * * is going to come down to credibility in terms of cross-examining the alleged victims[.]" (Tr. 20.)
 {¶ 22} During trial, defendant's counsel informed the court that he had been contacted by defendant's sister, Ms. Turner, regarding her suggestion that certain witnesses be called, including character witnesses. In her affidavit, Ms. Turner stated that she had repeatedly left messages for trial counsel regarding her brother's case, including a message indicating that she could testify about information concerning Ms. Folk. As outlined above, she averred that she could have testified regarding her opinion that Ms. Folk has a reputation in her family for not telling the truth, that she previously had made false allegations against defendant, and implied that Ms. Folk falsely accused defendant of rape because of pressure from police detectives. Thus, it is clear from her affidavit that she had attempted to contact trial counsel about information regarding Ms. Folk, and that she could have testified regarding Ms. Folk's character for truthfulness.
 {¶ 23} According to defendant, trial counsel's references to possible character evidence concerned his character, not the character of Ms. Folk. Indeed, defendant's trial counsel was at times vague in his references to possible character witnesses. Also, the testimony of Ms. Folk indicated that defendant had stated his desire to her that his bosses be contacted so that he may have a witness as to his character. Nonetheless, in view of Ms. Turner's affidavit, as well as defense counsel's statements at trial regarding Ms. Turner's messages about defendant's case, the record also supports the trial court's determination that trial counsel was aware of defendant's sister's desire that he call character witnesses concerning Ms. Folk. Moreover, the record demonstrates that trial counsel understood the significance of Ms. Folk's testimony and the importance of attempting, on behalf of his client, to discredit her testimony.
 {¶ 24} Defense counsel's representations to the court at trial revealed that he was making a tactical decision regarding possible character witnesses, which included any character witnesses regarding Ms. Folk. Additionally, the record demonstrates that defense counsel attempted to discredit Ms. Folk by vigorously cross-examining her at trial. Thus, we conclude that the record supports the trial court's determination that defense counsel understood that defendant and his sister wanted him to call character witnesses as to Ms. Folk, and that defense counsel, as a matter of trial strategy, decided not to call character witnesses.
 {¶ 25} Upon our review of the record, including the affidavit of Ms. Turner, we find that defense counsel's trial strategy regarding how to attempt to discredit Ms. Folk was not unreasonable and was within the realm of professionally competent assistance. Therefore, we further conclude that the trial court did not err in finding that defendant failed to set forth sufficient operative facts to establish substantive grounds for postconviction relief.
 {¶ 26} Based on the foregoing, we overrule defendant's first assignment of error.
 {¶ 27} Under his second assignment of error, defendant contends that the trial court erred in denying him relief based on his Blakely claim. In defendant's amended petition for postconviction relief, he argued that the trial court imposed non-minimum and consecutive sentences in violation of Blakely.
Relying upon this court's decision in Abdul-Mumin, supra, the trial court denied defendant's claim that the sentences violatedBlakely. In Abdul-Mumin, this court determined that Blakely
does not prohibit the imposition of non-minimum or consecutive sentences that are authorized under Ohio sentencing law. However,Abdul-Mumin is no longer good law. During the pendency of this action, the Supreme Court of Ohio released State v. Foster,
___ Ohio St.3d ___, 2006-Ohio-856. In Foster, the Supreme Court of Ohio applied Blakely to Ohio's felony sentencing scheme and held portions of that scheme to be unconstitutional.
 {¶ 28} Here, the issue is whether Blakely and/or Foster
are applicable to this case considering its posture as a collateral action. As noted by defendant, this cause is not before this court on direct review from his conviction and sentence; it is before this court as an appeal from a denial of his petition for postconviction relief. This court has already stated that the Blakely decision does not apply retroactively to cases on collateral review. State v. Myers, Franklin App. No. 05AP-228, 2005-Ohio-5998, ¶ 38. Moreover, in Foster, the Supreme Court of Ohio applied its holding only to cases pending on direct review. Id. at ¶ 104. As such, Blakely and Foster
are inapplicable to this case. Therefore, we overrule defendant's second assignment of error.
 {¶ 29} By his third assignment of error, defendant argues that due process required that he be entitled to discovery pursuant to the civil rules. He asserts that he sought to conduct discovery in order to support his claims for relief, and it was error for the trial court not to grant his motions for discovery.
 {¶ 30} The Supreme Court of Ohio has stated that "there is no requirement of civil discovery in postconviction proceedings."State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office (1999),87 Ohio St.3d 158, 159. See, also, State v. Samatar, Franklin App. No. 03AP-1057, 2004-Ohio-2641, at ¶ 23, citing Love. In fact, this court has specifically stated that "[a] post-conviction relief petitioner is not entitled to discovery to help him or her establish substantive grounds for relief." Statev. Gulertekin (June 8, 2000), Franklin App. No. 99AP-900. Thus, we find that the trial court did not err in not granting defendant's requests for discovery to support his claims for relief. Accordingly, we overrule defendant's third assignment of error.
 {¶ 31} Having overruled all three of defendant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown and Sadler, JJ., concur.